per curiam:
Hoy ejercemos nuestra jurisdicción discipli-naria sobre un notario que dio fe sobre hechos que le cons-taban como falsos. También debemos determinar si un abo-gado incurre en una violación al Canon 38 del Código de Ética Profesional, infra, al enviar una carta al quejoso me-diante la cual le avisó de su intención de presentar una demanda de daños y perjuicios presuntamente causados por su queja. Antes de evaluar las controversias plantea-das, veamos los hechos que generaron ambas acciones.
*1071 I
El Ledo. Miguel Ángel Ojeda Martínez (en adelante li-cenciado Ojeda Martínez o querellado) fue admitido al ejer-cicio de la abogacía el 25 de enero de 1985 y prestó jura-mento como notario el 1 de julio de 1985.
El 11 de agosto de 2005 el Sr. Luis Raúl Delgado Mercado (en adelante quejoso) presentó una queja contra el licenciado Ojeda Martínez.([1]) El 25 de octubre de 2005, la Secretaria de este Tribunal, cumpliendo con la Regla 14(d) de nuestro Reglamento, 4 L.RR.A. Ap. XXI-A, refirió a la Oficina de Inspección de Notarías (en adelante ODIN) co-pia del expediente de la queja de referencia para la inves-tigación y el informe correspondientes. Procedemos a rela-tar en detalle los acontecimientos que motivaron la Querella, según surgen del Informe del Comisionado Especial, del Informe de ODIN y del expediente sobre la gestión profesional del licenciado Ojeda Martínez.
Surge del Informe de ODIN que para la fecha del otor-gamiento de la Escritura Núm. 24 de 22 de mayo de 1989 (en adelante Escritura Núm. 24), los dueños regístrales del inmueble en cuestión eran el padre y la madre del quejoso. El licenciado Ojeda Martínez autorizó la Escritura Núm. 24, sobre Donación y Acta de Comprobación de Edificación Nueva. Mediante la referida Escritura, los dueños regís-trales del inmueble en cuestión donaron su derecho propie-tario a Lisandra Delgado Mercado —hija de los donantes y hermana del quejoso— y a su esposo, Braulio Collazo Tosca. Esta donación fue revertida posteriormente me-diante la Escritura Núm. 71 de 22 de septiembre de 1990 *1072 (en adelante Escritura Núm. 71), autorizada por el notario aquí querellado. En esta última instancia comparecieron como donantes la hermana del quejoso y su esposo; como donatarios, comparecieron el padre y la madre del quejoso.
Por su parte, ODIN concluyó que el querellado autorizó un contrato simulado mediante la referida Escritura Núm. 24. Específicamente, según las alegaciones del licenciado Ojeda Martínez, ODIN concluyó que el querellado autorizó una Escritura de Donación con conocimiento de que los comparecientes deseaban realizar la compraventa de la propiedad a favor de la hermana del quejoso y su esposo. En consecuencia, ODIN imputó al licenciado Ojeda Martí-nez una violación al Canon 35 del Código de Etica Profe-sional, 4 L.P.R.A. Ap. IX. ODIN también concluyó que el licenciado Ojeda Martínez incurrió en una conducta alta-mente impropia en contravención al Canon 38 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX. Basó su determina-ción en que, dentro del trámite de la presente Queja,([2]) el querellado cursó una carta al quejoso en la cual le notificó la posibilidad de instar una demanda por daños y perjui-cios supuestamente causados por el quejoso, a raíz de la presentación de la queja de autos.
Por otro lado, según relató el licenciado Ojeda Martínez en su réplica a la queja presentada, el quejoso solicitó sus servicios legales durante 1989. Adujo el licenciado Ojeda Martínez que el quejoso le informó que interesaba obtener el dinero correspondiente a sus derechos que, según él, te-nía sobre la segunda planta de una casa que pertenecía a sus padres. El quejoso alegó que la segunda planta le per-tenecía, pues, según él, fue construida con su patrimonio. Por su parte, la hermana del quejoso, junto a su esposo, interesaba comprar la propiedad y solicitar un préstamo hipotecario. De esta forma, los padres y dueños de la pro-piedad acordaron vender la propiedad a su hija y pagar al quejoso el dinero que reclamaba. A su vez, el quejoso in- *1073 formó al notario que la propiedad se utilizaría como garan-tía hipotecaria y “que era necesario que estuviera regis-trada a nombre de su hermana y su cuñado para gestionar el préstamo”.![3])
Así las cosas, el licenciado Ojeda Martínez informó al quejoso “que si todas las partes estaban de acuerdo, la única manera de poder realizar dicha transacción válida-mente era por vía de donación”.!([4]) Posteriormente, el que-rellado autorizó la Escritura Núm. 24, sobre Donación y Acta de Comprobación de Edificación Nueva. Sin embargo, aunque la hermana y el cuñado del quejoso comenzaron a gestionar el préstamo hipotecario, el quejoso informó al li-cenciado Ojeda Martínez que el préstamo no fue otorgado. Por esta razón, el querellado aconsejó al quejoso y a su familia “revertir ... título de la propiedad a nombre de sus padres vía donación [,] tal y como se había hecho en un principio”.![5]) Así, el 22 de septiembre de 1990 el querellado autorizó la Escritura Núm. 71, mediante la cual Lisandra Delgado Mercado y su esposo —donatarios en la Escritura Núm. 24— comparecieron como donantes y sus padres como donatarios. Esta Escritura se inscribió en el Registro de la Propiedad.
El 31 de mayo de 2011, luego de examinar el Informe de ODIN, ordenamos a la Procuradora General que presen-tara la correspondiente querella. En esta imputó violacio-nes a los Cánones 35 y 38 del Código de Ética Profesional, supra.i([6]) Comenzado el trámite, nombramos al Hon. Wil *1074 fredo Alicea López como Comisionado Especial. En la con-ferencia celebrada el 29 de noviembre de 2011 por el Comi-sionado Especial, las partes estipularon someter el caso basado en las constancias de los autos.
Sometido el caso ante nuestra consideración y contando con los escritos que obran en autos, incluyendo el Informe del Comisionado Especial, examinamos las normas aplicables.
J-H J-H
 A. El Canon 35, supra, impone a los abogados un deber de actuar con sinceridad y honradez. Este canon dis-pone:
La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
No es sincero ni honrado el utilizar medios que sean incon-sistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o fa-cilitar la desaparición de evidencia testifical en un caso tam-bién es altamente reprochable. 4 L.P.R.A. Ap. IX, C. 35.
Al respecto, hemos expresado que la conducta de un abogado debe ser sincera y honrada frente a todos y *1075 ante todo tipo de acto. In re Pons Fontana, 182 D.P.R. 300 (2011). En esencia, se infringe este deber por el simple he-cho de faltar a la verdad, independientemente de los moti-vos de la falsedad, puesto que no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar. In re Nieves Nieves, 181 D.P.R. 25 (2011).
En ese sentido, hemos apuntalado que
Se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin ella, la profesión jurídica no podría justificar su existencia. In re Montañez Miranda, 157 D.P.R. 275, 281 (2002).
Respecto a los notarios, establecimos que cualquier hecho que un notario asevere en un documento público que no concuerde con la verdad, constituye una violación al Canon 35, supra, independientemente si hubo intención de faltar a la verdad. In re Tejada Rivera I, 155 D.P.R. 175, 182 (2001).
Entre algunas de las funciones de los notarios se encuentran la de “recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad ...”. (Énfasis suplido). Art. 2 de la Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. see. 2002), conocida como Ley Notarial de Puerto Rico. Véase In re Avilés, Tosado, 157 D.P.R. 867 (2002). Para ello, el notario está autorizado por ley para dar fe e impartir autenticidad a los negocios jurídicos y otros actos extrajudiciales que se realicen ante él. In re Avilés, Tosado, supra, pág. 889. Todo lo anterior es corolario de la fe pública notarial, principio doctrinal consagrado en el Art. 2 de la Ley Notarial de Puerto Rico, supra. Este artículo dispone que
*1076 El notario es el profesional del Derecho que ejerce una fun-ción pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos ex-trajudiciales que ante él se realicen, sin perjuicio de lo dis-puesto en las leyes especiales. Es su función recibir e interpre-tar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle [s] au-toridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 L.P.R.A. see. 2002.
Hemos reiterado que la fe pública notarial constituye la espina dorsal de la profesión notarial. In re Collazo Sánchez, 159 D.P.R. 769, 774 (2003); In re Avilés, Tosado, supra. Véase, además, In re González Maldonado, 152 D.P.R. 871 (2000). Esto se debe a que el notario no es un simple observador del negocio jurídico que autoriza; por el contrario, al dar fe, el notario se asegura que el documento y los negocios allí contenidos son verdaderos y que la transacción es válida y legítima. In re Avilés, Tosado, supra, pág. 889.
En fin, el Canon 35, supra, obliga a los miembros de la profesión legal a observar una conducta totalmente sincera y honrada y prohíbe cualquier medio incompatible con la verdad. In re Cuyar Fernández, 163 D.P.R. 113, 117 (2004). Es por ello que condenamos enérgicamente la participación consciente de un abogado, como funcionario o parte, en el otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. “Tal conducta es incompatible con la función pública del notario y con las exigencias de veracidad y honestidad que esta función acarrea”. In re Collazo Sánchez, supra, pág. 775.
B. Nos corresponde evaluar si el notario querellado violó su deber ético impuesto por el Canon 35, supra. En particular, debemos examinar si el notario, según lo dis-puesto en los Cargos I y II, violó el principio de la fe pú- *1077 blica notarial y su deber de sinceridad y honradez al auto-rizar la Escritura Núm. 24 y la Escritura Núm. 71.
En este caso, el licenciado Ojeda Martínez aceptó en su comparecencia de 5 de junio de 2005, que el verdadero pro-pósito de las partes comparecientes en la Escritura Núm. 24, supra, era realizar una compraventa y que fue él quien asesoró a las partes para que realizaran la transacción me-diante Contrato de Donación; ello con el propósito de que los donatarios obtuvieran posteriormente un préstamo cuyo dinero utilizarían —la hermana del quejoso y su es-poso— para pagar a los donantes por la propiedad. A su vez, el donante y padre del quejoso y la donataria utiliza-rían el dinero recibido para pagar al quejoso la cuantía que éste reclamaba por la construcción de la segunda planta.
Esta admisión, sin más, es suficiente para concluir que el licenciado Ojeda Martínez no fue sincero al autorizar la Escritura Núm. 24. El querellado dio fe de una transacción que no representaba el verdadero interés de las partes en ese momento. Mientras el deseo de las partes era conseguir un préstamo hipotecario para otorgar eventualmente un Contrato de Compraventa, el notario asesoró a las partes e indujo a simular un negocio jurídico para la consecución de otro verdadero e interesado por las partes. Es decir, el no-tario aconsejó a las partes a transferir el dominio del in-mueble en cuestión mediante una donación, mientras el acuerdo de las partes era la otorgación de aquellos contra-tos necesarios para la concesión final de una compraventa. Nótese que la donación hecha mediante la Escritura Núm. 24, íue a título gratuito, pues no se expresa precio alguno sobre la propiedad ni intercambio de bienes que pueda lle-varnos a concluir que en dicha Escritura hubo una dona-ción parcial. Tampoco encontramos que el querellado haya recogido de alguna manera en la referida Escritura la ver-dadera intención de las partes de pagar posteriormente al donante por el inmueble con el producto del préstamo. Cuando el querellado se enteró que la compradora no ob- *1078 tuvo el préstamo necesario para la compraventa, éste ase-soró nuevamente a las partes a comparecer en la Escritura Núm. 71, con el propósito de revertir la titularidad del in-mueble donado.
Es por ello que, fuera de las rigurosidades y caracterís-ticas de los negocios jurídicos implicados en esta transac-ción, no tenemos base alguna para concluir que el licen-ciado Ojeda Martínez autorizó un instrumento público que contuviera la verdadera intención de las partes de pagar posteriormente al donante por el inmueble. Esto nos lleva necesariamente a colegir que la autorización de la Escri-tura Núm. 24 y la Escritura Núm. 71 creó una impresión falsa de la realidad frente a terceros, incluyendo a poten-ciales acreedores hipotecarios y al Estado.
Es claro que el querellado violó la fe pública notarial al impartir fe sobre unos hechos falsos con conocimiento de ello. Ciertamente, este proceder constituye una violación al Canon 35, supra, lo cual constituye una falta grave en nuestro ordenamiento.
I — i H-1 HH
No obstante la gravedad de los Cargos I y II discutidos, prestamos atención especial al Cargo III. Se nos indica que mientras la presente queja se tramitaba, el licenciado Ojeda Martínez violó el Canon 38, supra, al enviar una carta al quejoso en la cual le avisó de una posible demanda en su contra por alegados daños sufridos como consecuen-cia del proceso disciplinario que hoy atendemos. Por la trascendencia del contenido de la comunicación, a conti-nuación la reproducimos íntegramente:([7])
*1079 30 de octubre de 2008 Correo Certificado con Acuse de Recibo
Sr. Luis Raúl Delgado Mercado y su esposa, Sra. Zaida M. Reyes Hernandez
Re: Demanda en Daños y Perjuicios Estimado Sr. Y Sra. Delgado:
El proposito de la presente carta es para informarle que luego de revisarlos hechos que usted y su esposa estipularon en el caso, Civil Num. K AC2005-8779 (508) en donde usted y su esposa acordaron, aceptaron y al dia de hoy es final y firme, he decidido que llego el tiempo para que el abogado suscribiente le pida cuentas por los daños y perjuicios que durante años mantuvo a toda mi familia en angustia por usted haberme sometido una querella en el Tribunal Supremo, solicitando mi desaforo, destitución como abogado y los mas traumático, el perder mi licencia que es con lo que me gano mishabichuelas y mantengo a mis hijas y familiares, he decidido presentar contra usted y su esposa una demanda por Daños y Perjuicios por haberme radicado una querella de mala fe, con toda intención de que me desaforaran y perdiera el modus vivendi de ga-narme la vida y por ultimo haber mentido bajo juramento al alegar que este abogado habia defraudado a la Sra. Nilsa I. Caban apropiándome mediante engaño de la casa de Colinas de Fair View, que si su memoria aun le funciona, le ayude ha que no perdiera la misma primero ofreciemdome a prestarle el dinero para que usted pudiera pagar la hipoteca de esa casa y luego complaciéndolo y haciéndole el favor de comprarle esa casa por insistencia suya.
Ahora, la situación y el tiempo ha sacado la verdad a flote y con las estipulaciones que hizo en el caso antes mencionado y con la prueba de que usted mintió bajo juramento alegando que el suscribiente engaño a la Sra. Caban dejándola fuera de la correspondiente división de la misma, me han hecho decidir radicarle una demanda por la suma de $50,000.00 dolares y solicitarle al tribunal que me asegure el [c]obro de ese dinero poniéndole un gravamen a su participación hereditaria en la propiedad donde reside. Lamento mucho que usted en su afan por hacerle daño a varias personas, no pensó que le sucedería de ser la parte perdedora y la que con toda mala fe e intención me radico una querella cargada de mentiras y calumnias que al presente tendrá que pagar. El poner en riesgo el medio de una persona ganarse la vida de la forma mal intencionada que *1080 usted utilizo para hacerme daño, merece que ahora aprenda que lo que se hace de mala fe, a su tiempo tendrá los efectos que merece. No creo que usted pueda pensar que el haberme intentado dejarme a mi y a mis hijas en la Calle, nos hizo sufrir y angustiarnos por todos estos años. Le doy la Gloria al Señor que no permitió que la maldad venciera la verdad y ahora le toca a usted y a su esposa sentir lo que mi familia sintió cuando usted y su esposa injustamente nos ataco y pidió mi desaforo.
Puede estar seguro que la prueba esta ahí y es cuestión de tiempo el que los tribunales observen las contradicciones que usted y su esposa hicieron en la querella que me radicaron y luego en la estipulación que presentaron en corte y que al dia de hoy ya es final y firme.
Le ofrezco una alternativa para que la acción que radicare no le afecte brutalmente y es que si usted mi hace un pago de $5,000,00 dolares como gastos y daños ocasionados, en el ter-mino de 30 dias, estaría dispuesto a renunciar por escrito el demandarlo por $50,000.00 dolares.
Aunque no lo crea, yo al contrario suyo le oro a Dios por usted porque se que esa es el deseo del Señor. Ahora sus actos ten-drán que enfrentar sus efectos. Tiene 30 dias para aprove-charse de mi propuesta, de no aceptarla, lamentablemente, le radicare una demanda por todos los daños y angustias que usted me hizo pasar a mi y a mi familia y entenderá que las actuaciones fuera de la voluntad de Dios tienen que pagar su precio.
En espera que sea sabio y acepte la alternativa que le ofrezco de compensar los daños brutales que su mala fe me ha ocasio-nado y paga en cheque certificado la suma de $5,000.00, dejare el asunto ahí, pero si usted comete el error nuevamente de creer que no tengo el derecho de reclamarle mediante esta carta, le aseguro que volverá nuevamente a perjudicarse aun mas de lo que actualmente esta.
Atentamente;
Ledo. Miguel A. Ojeda Martínez (por la misericordia de Dios que no permitió que usted me dejara sin poderme ganar la vida. Apéndice, págs. 81-82.
Mediante la referida misiva, el querellado consideró que el proceso disciplinario fue instado por el quejoso sin fun-damento alguno. En consecuencia, estimó que había su-frido daños y perjuicios ascendentes a cincuenta mil dóla- *1081 res ($50,000). Asimismo, el licenciado Ojeda Martinez aprovechó la misiva para hacer una oferta de transacción del potencial pleito. En específico, el notario ofreció abste-nerse de presentar el potencial pleito por cinco mil dólares. Consideramos que ese proceder representa una violación a los deberes éticos de la profesión legal. Veamos.
El Canon 38, supra, dispone, en lo pertinente, que todo abogado debe esforzarse para exaltar el honor y la dignidad de la profesión, aunque ello conlleve grandes sacrificios personales. Indudablemente, “ ‘[c]ada abogado es un espejo en [el] que se refleja la imagen de la profesión ...”. (Enfasis suprimido). In re Silvagnoli Collazo, 154 D.P.R. 533, 541 (2001), citando a In re Ortiz Brunet, 152 D.P.R. 542, 556 (2000), y a su vez, In re Coll Pujols, 102 D.P.R. 313, 319 (1974). El abogado debe evitar hasta la apariencia de conducta profesional impropia. In re Silvagnoli Collazo, supra, pág. 541. La razón es que la conducta impropia o hasta su apariencia, tiene el efecto de malograr la imagen, la confianza y el respeto de la ciudadanía hacia la profesión. In re Gordon Menéndez I, 171 D.P.R. 210, 216 (2007); In re Sepulveda Girón, 155 D.P.R. 345 (2001). De esta forma, hemos sancionado a los abogados por la apariencia de conducta impropia. Véanse: In re Silvagnoli Collazo, supra; In re Nogueras Cartagena, 150 D.P.R. 667 (2000); In re Ortiz Brunet, supra.
Hemos establecido que un abogado puede aceptar su responsabilidad y transigir su diferencia con el quejoso. Véanse: Canon 26 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX; In re Ríos Ríos, 175 D.P.R. 57, 76 (2008). Véase, además, In re Pagán Ayala, 117 D.P.R. 180, 187 (1986). Incluso, es norma que la admisión de responsabilidad civil y el resarcimiento por el abogado a su cliente serán factores atenuantes que se analizarán conjuntamente con las circunstancias del caso. In re Ríos Ríos, su *1082 pra, págs. 76-77. Sin embargo, el Canon 26, supra, esta-blece un “principio ético ... dirigido a evitar ... que el abogado limite, se exonere o evada, contractualmente o de otro modo, su responsabilidad profesional”. In re Ríos Ríos, supra, pág. 76. Por esta razón, en In re Pagán Ayala, supra, pág. 187, aclaramos que
... en ninguna forma podrá el abogado transigir con su cliente la acción civil en daños por mala práctica profesional, al esta-blecer como condición para ello que no se presente querella por violación ética en su contra.
Por tal razón, un contrato con tales condiciones no evita nuestra jurisdicción disciplinaria. Id.
Sin embargo, en este caso nos encontramos en una si-tuación distinta; no se trata de que el licenciado Ojeda Martínez hiciera una oferta de manera expresa en torno a la transacción de la queja presentada. Por el contrario, el contenido de la carta sobre un aviso de pleito denota apa-riencia impropia que, a su vez, puede tener un efecto ex-tremadamente lesivo para la honra de la profesión. En efecto, consideramos que este tipo de carta es altamente impropia cuando, aún pendiente el proceso disciplinario, un abogado ejerce presión económica y psicológica me-diante artificios y presiones sobre los ciudadanos que pre-senten quejas éticas. Esto puede tener un efecto desalen-tador (“chilling effect”) de manera implícita. Asimismo, puede provocar que el quejoso desista del proceso disciplinario. En consecuencia, resolvemos que enviar este tipo de carta amenazante, aún pendiente la adjudicación del proceso disciplinario, constituye una violación al Canon 38 del Código de Etica Profesional, supra.
Somos conscientes de que las quejas sobre conducta pro-fesional dan paso a un proceso difícil de enfrentar para la vida profesional y personal de cualquier abogado. No obs-tante, el abogado no puede valerse de artificios y amenazas para presionar indebidamente a un quejoso. De igual *1083 forma, somos conscientes de que, en ocasiones, el abogado puede sentir extrema molestia, máxime cuando entiende que la queja presentada en su contra no tiene fundamento válido. Empero, amenazar al quejoso con un posible pleito de daños y perjuicios tiene el efecto de manchar la honra de la profesión. Distinto al resto de los procesos adjudica-tivos judiciales o administrativos, el abogado debe enfren-tar el proceso sobre conducta profesional con la honra y el sacrificio que conlleva la profesión de la abogacía; en su día, tendrá la oportunidad de defenderse y persuadir a to-das aquellas personas relacionadas con el proceso adjudi-cativo de quejas sobre conducta profesional. En fin, conde-namos enérgicamente que un abogado intente evadir el proceso disciplinario enviando cartas de aviso de pleito por alegados daños causados por la presentación de una queja relacionada con su conducta profesional.
Por los fundamentos antes esbozados, colegimos que el licenciado Ojeda Martínez incurrió en violaciones a los Cánones 35 y 38 del Código de Ética Profesional, supra, según lo dispuesto en los cargos formulados. Nos resta determi-nar cuál debe ser la sanción a imponer.
IV
Hemos reiterado que al momento de imponer la sanción disciplinaria consideramos los factores siguientes:
“(i) la buena reputación del abogado en la comunidad; (ii) su historial previo; (iii) si esta constituye su primera falta y si alguna parte ha resultado perjudicada; (iv) la aceptación de la falta y su sincero arrepentimiento; (v) si se trata de una con-ducta aislada; (vi) el ánimo de lucro que medió en su actua-ción; (vii) resarcimiento al cliente, y (viii) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien de acuerdo con los hechos”. (Énfasis suprimido). In re Pérez Marrero, 185 D.P.R. 449, 461 (2012), citando a In re Quiñones Ayala, 165 D.P.R. 138, 147 (2005). Véase In re Mulero Fernández, 174 D.P.R. 18, 37 (2008).
*1084 Estos criterios nos sirven de guía al determinar la san-ción que procede imponer.
En su informe, el Comisionado Especial nos sugiere que atemperemos la sanción a las admisiones del licenciado Ojeda Martínez, que ciertamente han sido de beneficio para el proceso disciplinario. También, al revisar el expe-diente personal del licenciado Ojeda Martínez, tomamos como atenuante que no tiene historial disciplinario previo al que hoy atendemos.
V
Por los fundamentos que anteceden, suspendemos al li-cenciado Ojeda Martínez del ejercicio de la abogacía y la notaría por un término de tres (3) meses a partir de la no-tificación de la presente Opinión “per curiam”. El licen-ciado Ojeda Martínez tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y les devolverá los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no realizado. De-berá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país y certificar a este Tribunal, dentro del término de treinta (30) días, el cumplimiento con lo aquí dispuesto. Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Ojeda Martínez y los entregará a la Direc-tora de la Oficina de Inspección de Notarías para la corres-pondiente investigación e informe.

Se dictará Sentencia de conformidad.

El Juez Presidente Señor Hernández Denton, la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Ro-dríguez Rodríguez no intervinieron.

(1) El quejoso adujo que el licenciado Ojeda Martínez, actuando como notario, incurrió en un conflicto de interés al autorizar la Escritura Núm. 24 de 22 de mayo de 1989 y la Escritura Núm. 71 de 22 de septiembre de 1990. Además, alegó que el abogado ocultó documentos, faltó a la lealtad y fidelidad a la amistad, y se autore-presentó en una Escritura de Compraventa para ocultar información y no compartir bienes gananciales con su exesposa. Por último, indicó que el abogado pretendió sobornarlo para intentar detener la investigación. Sin embargo, estas alegaciones fueron depuradas según la prueba evaluada por la Oficina de Inspección de Notarías.

(2) AB-2005-180.

(3) Réplica a la queja AB-2005-180 de 5 de junio de 2006, pág. 2, Apéndice, pág. 24.

(4) íd.

(6) íd.

(6) La Procuradora General imputó los cargos siguientes:
“Cargo [s] I y II
El licenciado Miguel A. Ojeda Martínez incurrió en conducta que viola la fe pública notarial de la cu[a]l es custodio y los preceptos enunciados en el Canon 35 de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 35, al dar fe de hechos falsos en la Escritura Núm. 24 de 22 de mayo de 1989 en donde se realiza una donación cuando las partes interesaban una compraventa, donación que luego fue revertida en una segunda escritura autorizada por dicho abogado el 22 de septiembre de 1990, Escritura Núm. *1074 71. El notario al autorizar dichas transacciones conocía que las partes lo que intere-saban en realidad era la venta del inmueble en cuestión y la obtención de dinero para realizar un pago al quejoso, señor Luis Raúl Delgado Mercado, quejoso.

“Cargo III

El licenciado Miguel A. Ojeda Martínez violó las disposiciones del Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. Di C. 38, el cual, entre otras cosas, dispone que todo abogado tiene el deber de evitar, en todo momento, hasta la apariencia de conducta impropia. Los hechos relatados previamente y contenidos en el Informe rendido por ODIN en cuanto a la comunicación del 30 de octubre de 2008, demuestra a todas luces la violación de este [clanon”. Querella, págs. 3-4.

(7) Transcribimos la carta tal como surge del expediente.