EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re<br><br>Rafael Quiñones Ayala | 2005 TSPR 99<br><br>164 DPR _____ |

Número del Caso: AB-2004-253


Fecha: 30 de junio de 2005


Abogados del Peticionario:

>              Lcda. Margarita Carrillo Iturrino
>              Lcdo. Mario A. Rodríguez Torres

Oficina del Procurador General:

>              Lcda. Minnie H. Rodríguez López
>              Procuradora General Auxiliar

Oficina de Ética Gubernamental:

>              Sr. Hiram R. Morales Lugo
>              Director Ejecutivo



Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Rafael Quiñones Ayala                AB-2004-253

PER CURIAM

San Juan, Puerto Rico, a  30 de junio de 2005.

I

El 9 de diciembre de 2003, el Área de Investigaciones y Procesamiento Administrativo de la Oficina de Ética Gubernamental (en adelante "O.E.G.") presentó una querella contra el licenciado Rafael Quiñones Ayala (en adelante "el querellado") imputándole infracciones a los Artículos 3.2(c) y 3.4(d) de la Ley Núm. 12 de 24 de julio de 1985[1], según enmendada, conocida como la Ley de Ética

---

[1] El Art. 3.2(c) de la referida ley dispone lo siguiente:

> [N]ingún funcionario o empleado público utilizará los deberes y facultades de su cargo ni la propiedad o fondos públicos para obtener, directa  o indirectamente para  él,

Gubernamental del Estado Libre Asociado de Puerto Rico, así

como a los incisos 2, 3 y 4 del Artículo 13(c) del

Reglamento de Ética Gubernamental.[2]

En síntesis, la O.E.G. alegó que durante los meses de

junio, julio y agosto de 2003[3], el querellado, quien

---

para algún miembro de su unidad familiar, ni para cualquier otra persona, negocio o entidad, ventajas, beneficios o privilegios que no estén permitidos por ley. **3 L.P.R.A. sec. 1822(c).**

Por su parte, el Art. 3.4(d) del citado estatuto establece lo siguiente:

[N]ingún funcionario o empleado público a jornada completa podrá, durante horas laborables, representar, asesorar o servir como perito a personas o entidades privadas en litigios, vistas, audiencias públicas o cualquier asunto ante tribunales de justicia, organismos cuasi judiciales y agencias administrativas. **3 L.P.R.A. sec. 1824(d)**

[2] En lo aquí pertinente, el Art. 13(c) del Reglamento de Ética Gubernamental, relativo a las actividades incompatibles con el empleo, preceptúa lo siguiente:

[N]ingún funcionario o empleado público aceptará otro empleo, ni se dedicará a cualquier actividad comercial, profesional o de otra naturaleza, en las siguientes circunstancias: ....

2) Cuando interfiera o razonablemente se pueda esperar que influya en el desempeño de sus funciones oficiales.

3) Cuando le impida prestar una jornada completa de trabajo a la agencia.

4) Cuando traiga descrédito a la agencia o al Gobierno. **Reglamento Núm. 4827** de la Oficina de Ética Gubernamental, aprobado el 23 de noviembre de 1992.

[3] Específicamente durante los días 24 de junio, 15 de julio y 1 de agosto de 2003, fechas en las que éste compareció ante el Tribunal de Primera Instancia, Sala de San Juan, en representación del señor Carlos Rodríguez Rivera en asuntos de naturaleza penal.

entonces ocupaba un puesto de abogado a jornada completa en la División Legal de la Administración de Derecho al Trabajo (en adelante "A.D.T."), representó **durante horas laborables** a un ciudadano particular ante los tribunales del país en asuntos no relacionados con sus deberes oficiales como servidor público, anteponiendo de esta forma los intereses de su representado a los del Estado. Sostuvo, además, que el querellado certificó en las hojas oficiales de asistencia de la A.D.T. que durante las fechas en controversia había estado ocupado en asuntos inherentes a su cargo, cuando en realidad ejercía la profesión de abogado en su carácter privado. Finalmente, planteó que el licenciado Quiñones Ayala cobró salarios y recibió beneficios indebidamente por servicios que, si bien eran su responsabilidad, nunca rindió.

El 18 de diciembre de 2003, la O.E.G. presentó una querella enmendada en la que reiteró sus alegaciones contra el querellado y le atribuyó, además, una violación a los incisos 1, 3, 4 y 6 del Artículo 6(A) del Reglamento de Ética Gubernamental.[4] Luego de varios incidentes procesales,

---

[4] En lo pertinente, la citada disposición reglamentaria preceptúa lo siguiente:

Todo servidor público deberá:

(A) Evitar tomar cualquier acción, esté o no específicamente prohibida por este Reglamento, que pueda resultar en o crear la apariencia de:

1) Usar las facultades de su cargo, propiedad o fondos públicos para un fin privado. ....

el 13 de febrero de 2004, el licenciado Quiñones Ayala presentó su contestación a la querella enmendada.

Durante la fase de descubrimiento de prueba, las partes lograron un "Acuerdo de Transacción" en virtud del cual el querellado admitió haber cometido las infracciones imputadas en la querella, obligándose a pagar una multa administrativa de dos mil ochocientos dólares ($2800).[5] El referido acuerdo fue presentado ante la O.E.G. el 17 de junio de 2004 y, al día siguiente, la Oficial Examinadora designada suscribió una orden mediante la cual refirió el expediente del caso a la consideración del Director Ejecutivo de la O.E.G., recomendando favorablemente el acuerdo transaccional sometido.

Tras varios incidentes procesales, el 29 de septiembre de 2004, el licenciado Hiram R. Morales Lugo, Director

---

> 3) Impedir o entorpecer la eficiencia y la economía gubernamental.
>
> 4) Perder su completa independencia o imparcialidad. ....
>
> 6) Afectar adversamente la confianza del público en la integridad y honestidad de las instituciones gubernamentales. **Reglamento Núm. 4827**, *supra.*

[5] Ambas partes acordaron que, en vista de la difícil situación económica que atravesaba el licenciado Quiñones Ayala, éste habría de hacer un pago parcial inicial, al momento de suscribir el acuerdo, de mil cuatrocientos dólares ($1,400). El balance pendiente de la multa sería satisfecho en dos plazos adicionales de setecientos dólares ($700) cada uno, a ser consignados en la Secretaría de la O.E.G. los días 18 de julio y 18 de agosto de 2004, respectivamente.

Ejecutivo de la O.E.G., dictó una resolución[6] aprobando el "Acuerdo de Transacción" presentado por las partes y aceptando, además, la suma de dos mil ochocientos dólares ($2800) consignada por el querellado en pago de la sanción administrativa impuesta. De igual forma, el Director de la O.E.G. nos refirió el asunto para que determináramos las posibles violaciones del querellado a la ética profesional.

II

El 4 de noviembre de 2004, la O.E.G., por conducto de su Director Ejecutivo, presentó ante nos una queja juramentada[7] contra el licenciado Quiñones Ayala imputándole una violación al Canon 38 de Ética Profesional[8], a la luz de nuestros pronunciamientos en In re Silvagnoli Collazo[9]. La queja está fundada en los mismos hechos previamente investigados y adjudicados por la O.E.G. mediante su resolución de 29 de septiembre de 2004.

El licenciado Quiñones Ayala presentó su contestación a la queja de epígrafe el 27 de enero de 2005. Arguyó que al realizar las gestiones a favor del señor Rodríguez Rivera

---

[6] El archivo en autos de una copia de la notificación de dicha resolución a las partes se efectuó el 30 de septiembre de 2004.

[7] Junto a la referida queja juramentada, el Director Ejecutivo de la O.E.G. acompañó una copia certificada del expediente del caso *Oficina de Ética Gubernamental v. Rafael Quiñones Ayala*, núm. 04-51, según obra en la Secretaría de la referida agencia gubernamental.

[8] Referente a la preservación del honor y dignidad de la profesión de la abogacía, **4 L.P.R.A. Ap. IX, C. 38**

[9] 154 D.P.R. ___, 2001 T.S.P.R. 106.

ante el Tribunal de Primera Instancia no había mediado ánimo de lucro personal, ni había recibido compensación alguna por éstas, puesto que el representado era su amigo y vecino. Destacó que había invertido menos de nueve (9) horas laborables en dichas gestiones; sin embargo, **admitió haber incurrido en un error de juicio al así proceder**.

En cuanto a las hojas oficiales de asistencia se refiere, manifestó que no había tenido la intención de defraudar al erario público al cumplimentarlas. En ese sentido, señaló que las hojas de asistencia en controversia habían sido completadas "en bloque" y que, al llenarlas, solamente cotejó el calendario de trabajo preparado en su oficina, olvidando anotar las gestiones que había efectuado en beneficio de su amigo durante las mañanas del 24 de junio y 15 de julio y en la tarde del 1 de agosto de 2003. Sostuvo que, de haberlas recordado, las habría consignado en sus hojas de asistencia y, además, hubiera efectuado las correspondientes deducciones a las horas trabajadas en las referidas fechas.

De otra parte, y contrario al criterio expresado por la O.E.G. en su queja, el licenciado Quiñones Ayala arguyó que el caso de In re Silvagnoli Collazo, *supra*, es distinguible de la situación fáctica ante nos. Sostuvo, además, que al evaluar la queja instada en su contra debíamos tomar en consideración, entre otras, las siguientes circunstancias: (i) que éste **admitió haber cometido las infracciones imputadas en la querella presentada por la O.E.G.**; (ii) que

satisfizo en su totalidad la multa administrativa que se le impuso a raíz de dichas infracciones; (iii) que, por los mismos hechos, fue sancionado administrativamente por la A.D.T. al ordenarse su suspensión de empleo y sueldo por un término de quince (15) días; (iv) que su patrono, además, le descontó tres (3) días de su licencia regular por vacaciones, a pesar de que las gestiones realizadas a favor del señor Rodríguez Rivera no excedieron de nueve (9) horas laborables; y (v) que acató el dictamen de su patrono y, luego de cumplida la sanción administrativa, decidió renunciar a su empleo en la A.D.T.[10]

Por último, el licenciado Quiñones Ayala manifestó estar **"real y sinceramente" arrepentido de las actuaciones por las que ahora se le pretende sancionar disciplinariamente, las cuales "acepta y repudia"**.

El 29 de marzo de 2005, el Procurador General presentó su Informe. Indicó que, a la luz de los hechos aquí no controvertidos y de lo resuelto por esta Curia en In re Silvagnoli Collazo, *supra*, existe base para imputarle al querellado "una posible violación" al Canon 38 del Código de Ética Profesional, *supra*.

Con fecha de 24 de mayo de 2005, emitimos una resolución[11] concediéndole al licenciado Quiñones Ayala un término de veinte (20) días para expresarse respecto al

---

[10] El querellado renunció a su puesto en la A.D.T. el 21 de marzo de 2004, con efectividad al día 15 de abril del mismo año.

[11] Notificada a las partes el 25 de mayo de 2005.

Informe sometido por la Oficina del Procurador General. Éste compareció, en cumplimiento con nuestro requerimiento, el 2 de junio de 2005. Se reiteró en sus planteamientos anteriores, **aceptando haber incurrido en una violación al Canon 38,** *supra*, **y manifestando su sincero arrepentimiento por ello.** Igualmente, suplicó nuestra lenidad al castigarle por la falta cometida.

### III

La práctica de la abogacía está revestida de un alto interés público que requiere de una estricta observancia y reglamentación.[12] Distinto quizás a otras profesiones, dicha práctica conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo.[13]

En cuanto a los deberes de exaltar el honor y la dignidad de la profesión y de evitar la apariencia de conducta impropia se refiere, el Canon 38 del Código de Ética Profesional, *supra*, dispone lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. ....
>
> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

---

[12] Véase In re Negrón Negrón, 163 D.P.R. ___, 2005 T.S.P.R. 5; In re Pagán Ayala, 115 D.P.R. 814, 815 (1984).

[13] Véase In re Cuyar Fernández, 163 D.P.R. ___, 2004 T.S.P.R. 164; In re Cintrón Colón, 161 D.P.R. ___, 2004 T.S.P.R. 73; Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 613 (1993).

En repetidas ocasiones, este Tribunal ha advertido que por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen.[14]

De igual forma, reiteradamente hemos enfatizado que todo abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque ello implique ciertos sacrificios personales.[15] Además, deberá conducirse en forma digna y honorable, tanto en la vida privada como en el desempeño de su profesión.[16]

IV

En la queja juramentada presentada ante nos, la O.E.G. le imputa al licenciado Quiñones Ayala una infracción al Canon 38 del Código de Ética Profesional, *supra*, a tenor con nuestros pronunciamientos en In re Silvagnoli Collazo, *supra.* Por su parte, el querellado admite haber incurrido en la falta imputada, pero sostiene que el citado caso es "distinguible" de la situación fáctica que hoy nos ocupa.

En In re Silvagnoli Collazo, *supra*, resolvimos, entre otras cosas, que viola el deber de conducirse digna y

---

[14] Véase In re Cuyar Fernández, *supra*; In re Cintrón Colón, *supra*; In re Silvagnoli Collazo, *supra*; In re Ortiz Brunet, 152 D.P.R. 542 (2000); In re Coll Pujols, 102 D.P.R. 313, 319 (1974).

[15] Véase In re Silvagnoli Collazo, *supra*; In re Colón Ramery, 133 D.P.R. 555, 562 (1993).

[16] Véase In re Silvagnoli Collazo, *supra*; In re Irizarry Vega, González Rucci, 151 D.P.R. 916 (2000).

honorablemente y de evitar la apariencia de conducta profesional impropia, aquel abogado que devenga ingresos de un municipio por servicios legales no prestados.

Como parte de su acuerdo con la O.E.G. para transigir la querella administrativa [17] en su contra, el licenciado Quiñones Ayala admitió haber cometido las faltas allí imputadas y, con ello, haber devengado ingresos de la A.D.T. por servicios no prestados; lo que implica, invariablemente, el cobro indebido de fondos públicos. De igual forma, en su comparecencia ante nos, el licenciado Quiñones Ayala acepta haber incurrido en conducta violatoria del Canon 38 del Código de Ética Profesional, *supra*. El precepto al que hacemos referencia le imponía al querellado el deber de preservar, en todo momento, el honor y la dignidad de su profesión y de evitar la apariencia de conducta profesional inadecuada.[18]

Las gestiones del licenciado Quiñones Ayala, independientemente de que fueran en beneficio de su amigo y vecino, y que sólo consumieran un término de horas laborables relativamente corto, fueron **patentemente contrarias a los postulados éticos que gobiernan esta comprometida profesión y lesionan la dignidad de su ministerio.**

---

[17] Caso núm. 04-51.

[18] Véase Canon 38 del Código de Ética Profesional, *supra*; In re Silvagnoli Collazo, *supra*.

Al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta antiética, podemos tomar en cuenta los siguientes factores: (i) la buena reputación del abogado en la comunidad; (ii) el historial previo de éste; (iii) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (iv) **la aceptación de la falta y su sincero arrepentimiento**; (v) si se trata de una conducta aislada; (vi) **el ánimo de lucro que medió en su actuación**; (vii) resarcimiento al cliente; y (vii) cualesquiera otras consideraciones, ya bien **atenuantes o agravantes**, que medien a tenor con los hechos.[19]

En el presente caso reconocemos que si bien el licenciado Quiñones Ayala incurrió en conducta constitutiva de violación al Canon 38, *supra*, no es menos cierto que, al así proceder, éste invirtió una cantidad reducida de horas laborables, nueve (9) específicamente, para atender los asuntos legales de un ciudadano particular. Por ende, no estamos frente a un abogado que haya practicado activa y copiosamente la abogacía en horas laborables, tal como ocurrió en In re Silvagnoli Collazo, *supra*.[20] Además, es de rigor subrayar que el querellado no recibió compensación

---

[19] Véase In re Montalvo Guzmán, 164 D.P.R. ___, 2005 T.S.P.R. 82; In re Martínez Lloréns, 158 D.P.R. ___, 2003 T.S.P.R. 14; In re Vélez Barlucea, 152 D.P.R. 298, 310-11 (2000); In re Padilla Rodríguez, 145 D.P.R. 536 (1998).

[20] El abogado que allí sancionamos dedicó **226.25 horas** laborables, de su empleo como asesor del Municipio de Ponce, para atender casos privados, obteniendo remuneración económica sin prestar servicio alguno a su patrono.

económica de parte del señor Rodríguez Rivera por las gestiones que realizara en su defensa.

También debemos tomar en consideración que el licenciado Quiñones Ayala alcanzó un acuerdo transaccional con la O.E.G., aceptando su responsabilidad por las infracciones imputadas, y que satisfizo en su totalidad la multa administrativa que le impusieran. Asimismo, éste fue objeto de una sanción administrativa de parte de su antiguo patrono, la cual acató cabalmente. Por último, el querellado, además de aceptar haber incurrido en conducta profesional impropia, ha mostrado, en varias ocasiones, **un genuino arrepentimiento por sus actuaciones y las repudia.**

V

En virtud de los fundamentos que preceden, concluimos que, con su conducta, el licenciado Quiñones Ayala infringió el Canon 38 de Ética Profesional, *supra*, al atender la práctica privada de la abogacía durante horas laborables, en vez de cumplir con los deberes oficiales de su puesto en la División Legal de la A.D.T. Sin embargo, su actuación no reviste la gravedad de lo sucedido en In re Silvagnoli Collazo, *supra*, y en vista de las circunstancias atenuantes aquí presentes, limitamos la sanción disciplinaria a una **censura enérgica.** No obstante, se le apercibe al querellado que en el futuro deberá dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la profesión de la abogacía o, de lo contrario, será objeto de sanciones disciplinarias más severas.

Se dictará sentencia de conformidad. Notifíquese personalmente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

                                    AB-2004-253
Rafael Quiñones Ayala


                    SENTENCIA

San Juan, Puerto Rico, a 30 de junio de 2005

    A tenor con los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia en la que se censura enérgicamente al licenciado Rafael Quiñones Ayala por la conducta impropia desplegada. Se le apercibe que en el futuro deberá dar fiel cumplimiento a los Cánones de Ética Profesional que rigen la profesión de la abogacía o, de lo contrario, será objeto de sanciones disciplinarias más severas.

    Notifíquese personalmente al licenciado Quiñones Ayala con copia de la Opinión que antecede y de esta Sentencia.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.


                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo