EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Lcdo. Rafael A. Rivera Rivera | 2007 TSPR 150<br><br>172 DPR _____ |

Número del Caso: CP-2003-11


Fecha: 2 de agosto de 2007


Oficina del Procurador General:

                Lcda. Noemí Rivera De León
                Procuradora General Auxiliar


Abogados de la Parte Querellada:

                Lcdo. Francisco Vicenty Gronau


Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lcdo. Rafael A. Rivera Rivera
                                    CP-2003-11


PER CURIAM


San Juan, Puerto Rico, a 2 de agosto de 2007.


I.

Relatamos los acontecimientos según surgen de las determinaciones de hecho del Informe del Comisionado Especial y del expediente.

El licenciado Rafael A. Rivera Rivera (en adelante el licenciado Rivera Rivera o el querellado) fue admitido al ejercicio de la abogacía y del notariado los días 20 de enero y 2 de agosto del año 1993, respectivamente. El 16 de junio de 1994 el licenciado Rivera Rivera cesó voluntariamente del ejercicio de la notaría. Posteriormente éste solicitó ejercer nuevamente el notariado y el 16 de enero de 1998 fue readmitido a ejercer la notaría.

El 20 de febrero de 1998 el licenciado Rivera Rivera suscribió un contrato con el Frente Unido de Policías Organizados de Puerto Rico (en adelante la FUPO), mediante el cual se comprometió a prestar servicios legales a los miembros de esa organización a base de unas tarifas pre-establecidas en dicho contrato, las cuales serían pagadas por la FUPO directamente.

El 3 de diciembre de 2001 Grissell Rojas Martell (en adelante Rojas Martell o la quejosa) visitó la oficina del licenciado Rivera Rivera para solicitar sus servicios, ya que su hermano, Leopoldo Roldán Martell, quien era policía municipal y socio de la FUPO, había sido acusado de intento de robo y tentativa de asesinato. Rojas Martell conoció del licenciado Rivera Rivera a través de un folleto de la FUPO que contenía un listado de los abogados contratados por ésta para rendir servicios a sus socios.

El contrato entre la FUPO y el querellado claramente establecía que las partes **"t[enían] convenido un contrato mediante el cual el Abogado prestar[ía] servicios legales a los socios según el plan de tarifas de la Parte "F" de es[e] contrato"**. Por su parte, la parte "F" disponía que en los casos criminales de delito grave los honorarios serían $1,500 para casos de tentativa de asesinato y $1,000 para casos de robo. No obstante lo anterior, el licenciado Rivera Rivera le indicó a la quejosa que no aceptaría el caso bajo el contrato de la FUPO, sino que sólo lo aceptaría como un caso privado por la cantidad de $10,000. Le indicó también

que él podía reclamarle a la FUPO la cantidad de $2,000 aproximadamente, y que de esa manera ella tendría que pagar únicamente los restantes $8,000. La señora Rojas Martell aceptó lo exigido por el licenciado Rivera Rivera y le adelantó el pago de $4,500. Posteriormente Roldán Martell abonó a la deuda $1,000 adicionales, cantidad que pagó personalmente al querellado.

Durante el transcurso de los siguientes dos meses, el licenciado Rivera Rivera realizó unas gestiones en beneficio de su cliente, por las cuales facturó a la FUPO $600. Surge del expediente que el querellado cobró a la FUPO $100 por concepto de haber comparecido a una vista en la cual se solicitó una rebaja de la fianza impuesta y $500 por su alegada comparecencia a la vista preliminar. **Sin embargo, del expediente surge que la vista preliminar no se llegó a celebrar**. Esto, ya que los primeros dos señalamientos fueron pospuestos y el imputado se suicidó en una fecha anterior a aquélla para la cual estaba pautada la celebración de la vista preliminar. Como consecuencia de este trágico desenlace, el licenciado Rivera Rivera no realizó ninguna gestión ulterior en este caso.

El 15 de febrero de 2002 Rojas Martell acudió ante este Tribunal y presentó una queja en contra del licenciado Rivera Rivera, en la cual consignó:

> "El 13 de febrero de 2002 fui [a la] FUPO para informar la inconformidad con el servicio ofrecido por el Licenciado y para orientarme acerca de los pagos ya hechos por mi. Fue entonces cuando Rafael Morales, Vice Presidente de [la] FUPO, me informó que ya el Licenciado

estaba facturando a [la] FUPO y que él no podía cobrarme a mí".

El 19 de julio de 2002 la Oficina del Procurador General presentó un informe para someter a la consideración de este Tribunal la conducta incurrida por el licenciado Rivera Rivera en su gestión profesional. Mediante una resolución notificada el 19 de marzo de 2003 ordenamos al Procurador General a presentar una querella con los cargos correspondientes, a fin de continuar con el procedimiento disciplinario. Cumpliendo con su encomienda, el 9 de mayo de 2003 el Procurador General presentó una querella en la que formuló un cargo en contra del licenciado Rivera Rivera por entender que éste había violentado el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 24. Este Canon dispone, entre otras cosas, que la fijación de honorarios profesionales debe regirse siempre por el principio de que la profesión de la abogacía es parte integrante de la administración de la justicia y no un mero negocio con fines de lucro.

Por su parte, el licenciado Rivera Rivera contestó la querella referida el 24 de junio de 2003. En su contestación, alegó que no empero haber firmado el contrato con la FUPO en el cual se comprometió a brindar servicios legales a los socios de dicha organización por una tarifa pre-determinada, él conservaba la prerrogativa de no aceptar casos bajo el contrato referido y sólo aceptarlos si lo contrataban bajo su práctica privada, cobrando los

honorarios que él entendiera razonables. Sustentó su aseveración con una carta que, a petición suya, fue emitida por tres miembros de la nueva directiva de la FUPO.

El 30 de junio de 2003 designamos al ex Juez del otrora Tribunal de Circuito de Apelaciones, Antonio J. Amadeo Murga, para que en presencia de las partes y en calidad de Comisionado Especial recibiera prueba y rindiera un informe con sus determinaciones de hechos y recomendaciones que estimase pertinentes. Finalizada su encomienda, el 30 de septiembre de 2004 el Comisionado Especial presentó el informe requerido. Avaló la contención del querellado, por lo que recomendó el archivo de la querella.

El Procurador General presentó posteriormente una *Moción en Oposición al Informe del Comisionado*. En ésta, en esencia, el Procurador General expresó que el querellado no podía denegarle cubierta a un policía para así cobrarle a la FUPO la cuantía de honorarios pactada y, además, facturarle una cantidad adicional directamente al policía representado.

Pasamos a resolver.


II.

De entrada debemos señalar que este Tribunal no está obligado a aceptar el informe del Comisionado Especial, por lo que puede adoptar el mismo, modificarlo e, inclusive, rechazarlo. *In re:* López de Victoria Brás, 135 D.P.R. 688 (1994); *In re:* Soto López, 135 D.P.R. 642 (1994).

Consistentemente hemos enfatizado que al iniciar una gestión profesional, todo letrado debe tener presente el Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX, ya que éste contiene las normas generales que deben regir la fijación de honorarios de abogado. A esos efectos, dicho Canon expresamente indica que la fijación de honorarios profesionales deberá regirse siempre por el principio deontológico de que la profesión legal es parte de la administración de la justicia y no un mero negocio con fines de lucro. Véase, además, *In re: Díaz Lamoutte*, 106 D.P.R. 450 (1977). Veamos entonces si el licenciado Rivera Rivera infringió el Canon referido.

En el caso de autos no existe controversia alguna en torno al hecho de que, el 20 de febrero de 1998, el licenciado Rivera Rivera firmó un contrato de servicios profesionales con la FUPO **para brindarles servicios legales a los socios de ésta según las tarifas acordadas**. El monto de honorarios puede limitarse de antemano por disposición de ley, *In re: Sánchez*, 70 D.P.R. 905 (1950); o por el propio abogado, que acuerda prestar sus servicios por cantidades menores a las que se cobran ordinariamente, a cambio de recibir un mayor número de casos sobre el mismo asunto de alguna fuente, como sucedía con el acuerdo aquí con la FUPO. Tampoco existe controversia sobre el hecho de que el hermano de la quejosa, Roldán Martell, era socio activo de la FUPO, por lo que tenía derecho a utilizar los servicios legales que proveía la organización.

La cláusula "B" del contrato firmado por el querellado disponía expresamente que "el abogado prestará servicios legales a los socios según el plan de tarifas en la parte "F" de este contrato". Como se puede observar, la cláusula transcrita no contemplaba que el abogado contratado tendría la prerrogativa de decidir si prestar los servicios legales o no, sino que la misma creaba un mandato al abogado contratado para proveer los servicios pactados.

Por otro lado, la referida cláusula también establecía claramente la forma en la cual el abogado cobraría por sus servicios y la cantidad que tendría derecho a recibir por ellos. La parte "F" del contrato contenía un listado de los diferentes servicios que prestaría el abogado contratado y la tarifa que la FUPO pagaría por cada uno de ellos. En lo aquí pertinente, el contrato establecía que por casos de tentativa de asesinato y casos de robo, se pagaría $1,500 y $1,000, respectivamente.

En vista de lo anterior, no existe duda alguna sobre la cantidad que el querellado podía cobrar por cada uno de sus servicios; cantidad que sería pagada por la FUPO, **sin que fuese permisible cobrar un monto adicional** al cliente directamente. Sin embargo, a pesar de que a tenor con el contrato, el licenciado Rivera Rivera venía obligado a cobrar $2,500, éste le indicó a Rojas Martell que no aceptaría el caso de su hermano bajo el contrato de la FUPO, sino como un caso privado, para así cobrar $10,000. De esta manera, pretendió burlar su propio compromiso contractual,

excediendo así la tarifa aplicable y facturando a dos personas diferentes por un mismo servicio.

No obstante lo anterior, en su informe, el Comisionado Especial concluyó erróneamente que de la prueba admitida no surgía violación al Canon 24 de Ética Profesional por parte del querellado, por lo que recomendó el archivo de la queja. De una lectura del informe referido se desprende que el Comisionado Especial basó su recomendación esencialmente en la opinión contenida en una carta suscrita por los miembros de la nueva Directiva de la FUPO. La misiva referida, la cual validaba la actuación del querellado, fue preparada a petición suya.

La opinión contenida en la carta, la cual tiene fecha de 19 de mayo de 2003, es irrelevante a la controversia de autos. Ésta no puede ir por encima de lo que establece claramente el contrato firmado por el querellado, ya que sostener lo contrario implicaría que un abogado podría evadir la jurisdicción disciplinaria de este Tribunal con meramente obtener un comunicado como el de autos que valide sus actuaciones. Es norma conocida que cuando los términos de un contrato son claros, no cabe recurrir a reglas de interpretación, por lo que resulta improcedente examinar actos posteriores a su otorgamiento como técnica de interpretación. Trinidad v. Chade, 153 D.P.R. 280 (2001). Además, los hechos que dan base a la queja de autos ocurrieron a finales del año 2001 y principios del 2002, cuando los señores que firmaron la carta como miembros de la

nueva directiva de la FUPO, no formaban parte de ésta. Más relevante aún es el hecho de que previo a la fecha en que ocurrieron los acontecimientos de este caso, el señor Rafael Morales, quien fungía como vice-presidente de la FUPO, había emitido un recordatorio escrito en el cual hizo constar lo siguiente:

> Por este medio quiero traerle a su atención que hemos estado recibiendo llamadas de socios con relación a facturaciones por casos que están cubiertos por el contrato de servicios legales. Como es de conocimiento, todo aquello que está cubierto por el contrato de servicios, el cual fue aceptado por usted, no puede ser cobrado a nuestros socios. Le agradeceré que cuando tenga alguna duda en cuanto al costo y cubierta de los servicios nos llamen y con gusto le aclararemos sus dudas.

Todos los abogados contratados por la FUPO, incluyendo al licenciado Rivera Rivera, recibieron copia del recordatorio referido.

El querellado, como miembro de la profesión legal, al fijar sus honorarios, debió tener en cuenta su obligación contractual y más importante todavía, su rol como parte integrante de la administración de la justicia, pues la profesión legal no es un mero negocio con fines de lucro. Resulta altamente impropio por parte del querellado pretender cobrar a dos personas diferentes por el mismo trabajo, máxime cuando ya existía un contrato que le facultaba a cobrar solamente a la FUPO, estando así impedido de cobrarle también al socio de ésta. Entendemos que esta actuación denota un afán de lucro incompatible con el Canon 24 de Ética Profesional.

III.

Por todo lo anterior, resolvemos que el licenciado Rivera Rivera violó el Canon 24 de Ética Profesional. Se le amonesta por tal conducta y se le ordena devolver a los familiares de Roldán Martell, los $5,500 cobrados, en exceso a lo convenido con la FUPO, y por una labor que no llegó a realizarse.

El Lcdo. Rafael A. Rivera Rivera deberá realizar el pago ordenado dentro del transcurso de los próximos tres meses a partir de la notificación de la sentencia del caso de autos, y acreditar dicho pago ante nos, so pena de suspensión del ejercicio profesional.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Lcdo. Rafael A. Rivera Rivera

                CP-2003-11


SENTENCIA


San Juan, Puerto Rico, a 2 de agosto de 2007.


Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente Sentencia, resolvemos que el Lcdo. Rafael A. Rivera Rivera violó el Canon 24 de Ética Profesional.

Se le amonesta por tal conducta y se le ordena devolver a los familiares de Roldán Martell los $5,500 cobrados, en exceso a lo convenido con la FUPO, y por una labor que no llegó a realizarse.

El licenciado Rivera Rivera deberá realizar el pago ordenado dentro del transcurso de los próximos tres meses a partir de la notificación de esta sentencia, y acreditar dicho pago ante nos, so pena de suspensión del ejercicio profesional.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta sólo concurre con el resultado por entender que la conducta del abogado amerita una sanción más severa que una mera amonestación. Los Jueces Asociados señor Rebollo López y señor Rivera Pérez no intervinieron.


                Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo