EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In Re: | 2008 TSPR 125 |
| Nelson Rochet Santoro | 174 DPR ____ |

Número del Caso: TS-8923

Fecha: 30 de junio de 2008

Abogado de la Parte Peticionaria:

    Por Derecho Propio

Materia: Conducta Profesional
        (La suspensión será efectiva el 22 de julio de 2008
         fecha en que se le notificó al abogado de  suspensión
         inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In Re*:

Nelson Rochet Santoro                    TS-8923

PER CURIAM

San Juan, Puerto Rico a 30 de junio de 2008.

Mediante Opinión y Orden del 12 de marzo de 2006, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico decretó el desaforo del Lcdo. Nelson Rochet Santoro del ejercicio de la abogacía ante dicho foro en el caso In the Matter of: Nelson Rochet Santoro, Misc. No. 03-016(JAF); Civil No. 96-2443 (JAF). Posteriormente, el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito confirmó la referida determinación en el caso In the Matter of: Nelson Rochet-Santoro, No. 05-2855, 06-1690.

A la luz de la información recibida con relación a lo ocurrido en la jurisdicción federal, el 14 de septiembre de 2007 emitimos una Resolución mediante la cual le concedimos término a Rochet Santoro para que mostrara causa por la cual este Tribunal no debía imponer una sanción disciplinaria por los hechos que dieron lugar a su desaforo en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante, Corte de Distrito Federal). Dicha Resolución se le notificó a Rochet Santoro personalmente a través de la Oficina del Alguacil el 21 de septiembre del mismo año.

En respuesta, Rochet Santoro presentó una moción indicando que había solicitado reconsideración ante el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, por lo que requirió un término adicional para contestar la orden de mostrar causa. Dicha solicitud fue declarada con lugar y, a tales efectos, le dimos hasta el 29 de octubre para cumplir con lo ordenado.

Posteriormente, la moción de reconsideración presentada por Rochet Santoro fue denegada por el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito. No obstante, Rochet Santoro presentó ante nos una "Moción para que se paralicen los procedimientos" mediante la cual nos informó que había presentado ante el mencionado foro federal otra "Moción Clarificando la Reconsideración que fuera Denegada". En vista de que quedaban trámites apelativos pendientes, solicitó la paralización de los

procedimientos. Al día de hoy, Rochet Santoro no nos ha informado del resultado de esta última moción presentada. No obstante, la Secretaría de este Tribunal se comunicó con el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, donde le informaron que la solicitud aludida también fue denegada el 13 de diciembre de 2007.

Enterado este Tribunal de dicha determinación, se le concedió a Rochet Santoro un término final para contestar la orden de mostrar causa emitida el 14 de septiembre de 2007. Rochet Santoro compareció fuera del término concedido, solicitando una nueva extensión del plazo para cumplir con la orden de mostrar causa. El pasado 11 de junio de 2008 denegamos dicha solicitud y dimos por sometido el asunto. Por tanto, procedemos a resolver sin trámite ulterior.

I

El mencionado trasfondo procesal tuvo su génesis en la litigación que produjo la "Explosión de Río Piedras" contra las compañías Enron Corp., San Juan Gas y otros demandados. Los casos que se produjeron tras ese incidente fueron consolidados y resueltos mediante un acuerdo global de indemnización a ser pagada a favor de los demandantes bajo la supervisión del Juez Federal, Hon. Robert J. Ward. Rochet Santoro estaba admitido a la práctica en la Corte de Distrito Federal y representaba a múltiples demandantes envueltos en ese litigio.

Mientras el Hon. Robert Ward supervisaba los desembolsos del dinero producto del acuerdo transaccional,

desarrolló cierta preocupación con unas deducciones realizadas por Rochet Santoro de las cantidades correspondientes a sus clientes. En vista de ello, sugirió iniciar una investigación sobre el asunto, la cual -en efecto- fue ordenada por la Corte de Distrito Federal. Comenzada la investigación, varios ex-clientes de Rochet Santoro enviaron cartas y mociones expresando diversas inquietudes con la conducta profesional de Rochet Santoro y con la calidad de los servicios legales ofrecidos.

En esencia, las comunicaciones incluían alegaciones sobre insatisfacción con el manejo de los casos y con la comunicación entre abogado y cliente; alegaciones sobre amenazas para que los clientes firmaran los contratos de honorarios de abogado, y alegaciones sobre desembolsos no autorizados de los fondos disponibles tras el acuerdo transaccional. Además, durante el desarrollo de la investigación, se descubrió que Rochet Santoro había contratado al Sr. Enrique Cardona (quien no tenía licencia de abogado) y compartía con él los honorarios recibidos en el caso relacionado a la Explosión de Río Piedras.

Por estos hechos, y tras la correspondiente investigación, la entonces Magistrado Federal Aida Delgado Colón rindió un Informe ante la Corte de Distrito Federal en el cual le imputó a Rochet Santoro violación a las reglas 1.1, 1.3, 1.4, 1.5, 1.6, 1.8(f), 3.2, 5.4(a)(b)(c), 5.4(d)1, 8.2(a) y 8.4(a)(c)(d) de la Reglas Modelo de Conducta Profesional de la American Bar Association. Después de

concederle término a Rochet Santoro para reaccionar al referido Informe, se celebró la correspondiente vista disciplinaria, a la cual Rochet Santoro no asistió sin proveer justificación alguna.

Posteriormente, los jueces de la Corte de Distrito Federal se reunieron para discutir el asunto a la luz de los hallazgos de la Magistrado y de las objeciones escritas levantadas por Rochet Santoro, muchas de las cuales se relacionaban con alegadas violaciones al debido proceso de ley durante el proceso investigativo. Tras el correspondiente análisis, los jueces de la Corte de Distrito Federal determinaron que el proceso seguido en contra de Rochet Santoro cumplió con las exigencias que el debido proceso de ley garantiza en estas instancias y concluyeron que, dada la gravedad de la conducta, procedía su desaforo de la práctica de la abogacía ante dicho foro. El Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito sostuvo la determinación.

II

De entrada, debemos tener presente que el deber de conducirse de un modo decoroso, íntegro y consistente con los postulados de los Cánones de Ética Profesional es de aplicación a todos los abogados admitidos en nuestra jurisdicción, **independientemente del foro ante el cual postulen**. In re Córdova González, 135 D.P.R. 260, 267 (1994). Ello en vista de que la naturaleza de la profesión de abogado les impide actuar al margen de la conducta

esperada una vez son admitidos al ejercicio de la profesión en nuestro país. Por tanto, "[e]l mero hecho de ejercer la profesión *ante el foro federal o un foro administrativo no excluye* al abogado admitido en nuestra jurisdicción del ámbito de aplicación del Código de Ética Profesional" (Énfasis en el original) *Id*.

Conforme a lo anterior, cuando un abogado admitido al ejercicio de la profesión en Puerto Rico es sancionado disciplinariamente por otro foro judicial, es imperativo evaluar su conducta para determinar si procede la imposición de una sanción disciplinaria en nuestra jurisdicción.

III

Según surge de la Opinión y Orden de la Corte de Distrito Federal, Rochet Santoro incurrió en conducta impropia y deshonesta que afectó los intereses de sus clientes. En particular, dicho foro encontró probado que Rochet Santoro compartía honorarios con el señor Cardona a cambio de que éste financiara el litigio. A su vez, Rochet Santoro le daba al señor Cardona información privilegiada de los clientes y le permitía participar de los asuntos relacionados al caso. Igualmente, se estableció que Rochet Santoro autorizaba al señor Cardona a formar parte de las reuniones con los clientes y hasta custodiar los expedientes del caso. Asimismo, se probó que Rochet Santoro nunca les informó a sus clientes del contrato existente entre él y el señor Cardona. Además, quedó probado que Rochet Santoro no

representó a sus clientes con competencia y diligencia, al punto que muchos llegaron a considerar que abandonó el caso.

De igual manera, se estableció que Rochet Santoro hizo desembolsos no autorizados de los fondos correspondientes a sus clientes como parte del acuerdo transaccional. A su vez, quedó probado que Rochet Santoro trató de incluir gastos administrativos como parte de los honorarios contingentes y que incluyó en las facturas gastos no incurridos. Igualmente, se logró establecer que Rochet Santoro les decía a sus clientes que el Hon. Robert Ward era un racista, que fue enviado a la Corte de Distrito Federal a "cortarle la cabeza a los hispanos" y que dicho Juez desestimaría la demanda. Todas estas imputaciones tenían el propósito de conseguir que firmaran el acuerdo transaccional y el contrato de honorarios de abogado. De esa forma, se estableció que Rochet Santoro amenazaba a los clientes para que firmaran los contratos y les aseguraba un resultado determinado en el desenlace del caso. Finalmente, se probó que Rochet Santoro alteró documentos e incurrió en conducta deshonesta hacia sus clientes para beneficio personal.

Evidentemente, Rochet Santoro no sólo actuó en contravención de las Reglas Modelos de la American Bar Association —utilizadas como marco de referencia por la Corte de Distrito Federal— sino también en contravención de los Cánones de Ética Profesional imperantes en nuestra jurisdicción.

Por un lado, no cabe duda que Rochet Santoro violó el Canon 9 de Ética Profesional, el cual dispone que los abogados deben observar hacia los tribunales una conducta que se caracterice por el mayor respeto. 4 L.P.R.A. Ap. IX, C. 9. Dicho Canon establece que el deber de respeto antes mencionado también incluye la obligación de desalentar y **evitar ataques injustificados** o atentados ilícitos contra los jueces o los tribunales. *Id*; véase, además, In re Córdova González, *supra*, pág. 274. Ya anteriormente hemos expresado que "el abogado no tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces". In re López de Victoria, res. 22 de septiembre de 2004, 2004 TSPR 176. Igualmente, hemos afirmado que resulta nefasto a la buena práctica de la profesión que un abogado haga serias imputaciones sobre el obrar de un juez cuando las mismas no están avaladas por evidencia contundente e indubitada. *Id*; In re Crespo Enríquez, 147 D.P.R. 656 (1999).

A pesar de la claridad de dicho postulado ético, Rochet Santoro realizó ataques serios e infundados contra el Hon. Robert Ward, al indicarle a sus clientes que éste era un juez racista cuya misión en la Corte de Distrito Federal era perjudicar a los hispanos. De hecho, Rochet Santoro les infundió la idea de que dicho Juez les desestimaría la demanda, precisamente, por razones discriminatorias. Rochet Santoro incurrió en dicha conducta con el único fin de que

éstos firmaran el acuerdo transaccional y el contrato de honorarios de abogado.

De esa forma, Rochet Santoro no sólo socavó la confianza de sus clientes en el sistema de justicia federal, sino que mancilló injustificada e infundadamente la reputación de un miembro de la Judicatura federal. Siendo así, no cabe duda que éste no cumplió con el deber de observar el mayor de los respetos hacia los tribunales, ni con la obligación de propiciar que otros también lo observen, todo ello en violación del Canon 9 de Ética Profesional, *supra*.

De otro lado, somos del criterio que Rochet Santoro también se apartó de las exigencias éticas del Canon 18 de Ética Profesional. El referido Canon versa sobre el deber de **competencia y diligencia** del abogado en la tramitación de las causas que se le encomiendan. En particular, dicho Canon dispone que "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable". 4 L.P.R.A. Ap. IX, C. 18; véase, además, In re Pujol Thompson, res. 19 de junio de 2007, 2007 TSPR 129.

Evidentemente, la pauta que establece el Canon 18, *supra*, abarca una expectativa básica y razonable de lo que se espera de todo miembro del foro. Como funcionarios del tribunal, los abogados tienen que desplegar su mayor esfuerzo en la tramitación de los asuntos encomendados y

nunca deben apartarse de los estándares requeridos de diligencia, celo y competencia. Véase <u>In re Marrero Figarella</u>, 146 D.P.R. 541 (1998); <u>In re Rodríguez Torres</u>, 104 D.P.R. 758 (1976).

Sin embargo, la conducta de Rochet Santoro para con sus clientes no se caracterizó por la mayor diligencia y competencia posible. Por el contrario, de la Opinión y Orden de la Corte de Distrito Federal se desprende que éste no respondía a las llamadas de sus clientes y no les asistía adecuadamente en el proceso de descubrimiento de prueba. De hecho, como mencionamos antes, a menudo sus clientes se sintieron abandonados en el transcurso del litigio para el cual lo habían contratado. Por tanto, no cabe duda que Rochet Santoro incumplió con la exigencia básica de emplear en los trámites encomendados la mayor diligencia, omitiendo proveerles a sus clientes la mejor representación posible.

De igual manera, debemos reconocer que Rochet Santoro actuó de espaldas al deber de información que preceptúa el Canon 19 de Ética Profesional. La referida norma ética postula que el abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso. 4 L.P.R.A. Ap. IX, C. 19; véase, además, <u>In re Alonso Santiago</u>, res. 13 de septiembre de 2005, 2005 TSPR 137. Al interpretar dicho precepto, hemos expresado que un abogado debe **mantener a su cliente informado** de las gestiones realizadas y del desarrollo de los asuntos a su cargo, consultándole cualquier duda sobre

aquello que no caiga en el ámbito discrecional. Véase In re Acosta Grubb, 119 D.P.R. 595 (1987). Evidentemente, estas exigencias son elemento imprescindible en la relación fiduciaria que existe entre abogado y cliente. Véase In re García Muñoz, res. 3 de abril de 2007, 2007 TSPR 90.

No obstante, Rochet Santoro omitió informarles a sus clientes del acuerdo que tenía con el señor Cardona a los efectos de que éste financiaría el litigio a cambio de la mitad de los honorarios de abogado. Además, Rochet Santoro dejó de advertirles sobre las funciones que estaba poniendo en manos de esta persona sin licencia de abogado y dejó de informarles sobre el manejo que el señor Cardona tenía de los expedientes del caso. De esa forma, Rochet Santoro les ocultó a sus clientes información importante relacionada con sus casos y, por ende, incumplió el deber de información establecido en el mencionado Canon 19, *supra*.

A su vez, Rochet Santoro actuó en contravención de los principios recogidos en el Canon 33, el cual requiere que todo abogado **evite la práctica de la abogacía o la notaría por personas no autorizadas**. 4 L.P.R.A. Ap. IX, C. 33; véase, además, In re Gervitz Carbonnel, res. 28 de julio de 2004, 2004 TSPR 141. Igualmente, dicho Canon dispone que será impropio de un abogado permitir o facilitar que una persona no autorizada a ejercer la abogacía o la notaría cobre total o parcialmente por los servicios profesionales prestados por el abogado. *Id*. De forma similar, el Canon aludido prohíbe que un abogado permita que personas no

autorizadas suministren consejo legal y que el abogado se una en sociedad con personas no autorizadas a ejercer la abogacía cuando cualquiera de las actividades de la sociedad envuelva la abogacía o la notaría. *Id*. Al interpretar la referida disposición, hemos expresado que "[n]o sólo incurre en conducta violatoria del Canon 33 aquel abogado que permita que una persona ejerza ilegalmente la abogacía, <u>sino que claramente viola dicho Canon aquel jurista que comparte sus honorarios con una persona que no es abogado</u>" (énfasis en el original). <u>In re Franco Rivera</u>, res. 16 de octubre de 2006, 2006 TSPR 170.

A pesar de lo anterior, Rochet Santoro llegó a un acuerdo con el señor Cardona, persona no admitida al ejercicio de la abogacía, conforme al cual este último financiaría el litigio relacionado a la Explosión de Río Piedras, a cambio de la mitad de los honorarios que se recibieran por los servicios legales de Rochet Santoro. Además de que –bajo ese esquema– Rochet Santoro compartía indebidamente honorarios de abogado con el señor Cardona, también permitía que este último interviniera en el manejo del caso, en las reuniones con los clientes y hasta que custodiara los expedientes. De hecho, según la Opinión y Orden de la Corte de Distrito Federal, Rochet Santoro permitió que el señor Cardona tomara parte activa en la toma de decisiones relacionadas al caso para el que fue contratado. Por tanto, resulta innegable que Rochet Santoro autorizó a una persona no admitida al ejercicio de la

abogacía a formar parte de la representación legal de sus clientes y, en consecuencia, no se ajustó a la norma ética recogida en el Canon 33, *supra.*

Incluso, no cabe duda que la conducta antes mencionada supone, además, una transgresión del Canon 21 de Ética Profesional, el cual dispone –entre otras cosas– que "[l]a obligación de representar al cliente con fidelidad incluye la de **no divulgar sus secretos o confidencias**, y la de adoptar medidas adecuadas para evitar su divulgación" (énfasis nuestro). 4 L.P.R.A. Ap. IX, C. 21; véanse, además, In re Bauzá Torres, res. 31 de julio de 2007, 2007 TSPR 148; In Re Bonilla Rodríguez, 154 D.P.R. 684 (2001). Dicha norma ética pretende evitar una conducta profesional que mine el principio cardinal de confianza que fundamenta toda relación entre abogado y cliente. In re Bauzá Torres, res. 31 de julio de 2007, 2007 TSPR 148.

No obstante, Rochet Santoro no honró el deber de lealtad y confidencialidad que todo abogado tiene para con su cliente. Éste, en lugar de salvaguardar las confidencias de sus clientes, introdujo en la relación abogado-cliente a una tercera persona que tuvo una participación activa en el manejo del caso y que recibió parte de los honorarios pactados, todo ello sin el consentimiento de éstos. Dicha tercera persona tuvo acceso a información privilegiada y a detalles de los casos sobre los cuales Rochet Santoro ostentaba la representación legal. De hecho, como hemos mencionado antes, Rochet Santoro llevaba a ese tercero a las

reuniones con los clientes y puso en sus manos –sin la debida autorización– los expedientes de éstos. Por tanto, debemos concluir que Rochet Santoro no actuó de conformidad con el deber de fiducia y lealtad que supone la relación abogado-cliente.

También relacionado con el Canon 21, Rochet Santoro incurrió en una conducta que representa una grave falta al deber de lealtad hacia el cliente, y al deber de sinceridad y honradez que establece el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 35. Nos referimos al hecho probado ante la Corte de Distrito Federal de que Rochet Santoro realizó deducciones no autorizadas de los fondos correspondientes a sus clientes en concepto de indemnización como producto del acuerdo transaccional. Indudablemente, dicha conducta supone una seria afrenta contra la naturaleza fiduciaria que caracteriza la relación abogado-cliente y representa una desviación grave del estándar de sinceridad y honradez que exige la comunidad jurídica. La misma tiene el potencial de menoscabar la confianza de los ciudadanos en la profesión legal y de socavar los cimientos del sistema de justicia. En vista de ello, somos del criterio que dicha conducta amerita una severa sanción de parte de este Tribunal.

Ahora bien, además de lo anterior, Rochet Santoro incurrió en otras prácticas que atentan contra las normas que rigen lo relacionado a honorarios de abogado. Según señalamos antes, éste forzó a sus clientes a firmar los contratos de honorarios de abogado empleando medidas de

amedrentamiento y de amenazas. Igualmente, con el fin de asegurar sus honorarios, Rochet Santoro le hizo creer a sus clientes que les desestimarían la demanda si no lo contrataban y, con idéntico fin, les prometió resultados particulares en el desenlace del caso. Igualmente, quedó probado que éste facturó por gastos no incurridos e incluyó indebidamente en los honorarios contingentes ciertos gastos administrativos.

Claramente, dicha conducta infringe el Canon 24, en cuanto éste dispone que "[l]a fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y **no un mero negocio con fines de lucro**" (énfasis nuestro). 4 L.P.R.A. Ap. IX, C. 24; véanse, además, In re Rivera Rivera, res. 2 de agosto de 2007, 2007 TSPR 150; In re Díaz Lamoutte, 106 D.P.R. 450 (1977). En la medida que Rochet Santoro utilizó mecanismos inconsistentes con la verdad y la honestidad para asegurar sus honorarios de abogado, actuó bajo el entendido de que el ejercicio de la profesión es un simple negocio lucrativo. De esa forma, no le hizo honor a la norma que postula que los contratos de servicios profesionales se encuentran inmersos en normas deontológicas que dotan a la relación abogado-cliente de un interés público superior que puede trascender el interés exclusivo de las partes. Nassar Rizek v. Oscar Hernández, 123 D.P.R. 360 (1989).

La conducta antes mencionada constituye también una violación al Canon 35, *supra*, el cual requiere que los abogados actúen con **sinceridad y honradez** en las relaciones con sus representados. De hecho, al examinar los contornos de este Canon, hemos expresado claramente que "[n]o es sincero ni honrado utilizar medios que sean inconsistentes con la verdad". In re Marini Román, res. 6 de octubre de 2005, 2005 TSPR 148. Dado que Rochet Santoro sembró expectativas que no necesariamente se ajustan a la realidad, y toda vez que les transmitió a sus clientes información tergiversada sobre los funcionarios del tribunal con el único propósito de satisfacer sus intereses personales, resulta innegable que éste no se condujo hacia sus clientes de forma sincera y honrada.

Evidentemente, tampoco fue sincero ni honrado de parte de Rochet Santoro alterar documentos durante el trámite del litigio. El mencionado Canon 35, *supra*, contempla este asunto de forma particular y, al respecto, establece que "[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar a los testigos, al redactar affidávit **u otros documentos** y al presentar causas" (énfasis nuestro). Indudablemente, dicha conducta refleja unas deficiencias en el estado ético de Rochet Santoro que, hasta en las cosas más pequeñas, parecen impedirle obrar con honradez. Debemos recordar que, más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado, y sin la misma no

podría justificar la profesión jurídica su existencia. In re Davidson Lampón, res. 12 de mayo de 2003, 2003 TSPR 92.

Finalmente, examinada la conducta de Rochet Santoro en su totalidad, somos del criterio que éste no cumplió con la obligación de todo abogado de **exaltar el honor y la dignidad** de la profesión. Nótese que el Canon 38 de Ética Profesional establece que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales…". 4 L.P.R.A. Ap. IX, C. 38. Al interpretar este Canon hemos sostenido que "[c]ada abogado es un espejo en que se refleja la imagen de la profesión... que se debe representar con limpieza, lealtad, y el más escrupuloso sentido de responsabilidad". In re Quiñónez Ayala, res. 30 de junio de 2005, 2005 TSPR 99; In re Ortiz Brunet, 152 D.P.R. 542 (2000).

A la luz de estos principios, consideramos que Rochet Santoro no se esforzó, al máximo de su capacidad, en exaltar el honor y la dignidad de la profesión. Su conducta estuvo impregnada de una impropiedad tan severa que produjo la impresión de haber estado utilizando la profesión primordialmente con ánimo de lucro. Ciertamente, la conducta de Rochet Santoro no puso de manifiesto los principios que subyacen la profesión legal, sino que su conducta se distinguió por sacar provecho de su posición y por emplear medidas y actuaciones inconsistentes con la verdad y la honradez. Sus actuaciones constituyen un

atentado, no sólo contra la lealtad que les debía a sus clientes, sino contra el sistema judicial mismo en cuanto atacó infundadamente la reputación de un magistrado.

### IV

Conforme a lo anterior, concluimos que la conducta de Rochet Santoro que conllevó su desaforo en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico constituye, a su vez, conducta violatoria de los Cánones 9, 18, 19, 21, 24, 33, 35 y 38 de Ética Profesional en nuestra jurisdicción.  En vista de ello, se decreta su suspensión indefinida del ejercicio de la abogacía.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In Re*:

Nelson Rochet Santoro                    TS-8923


SENTENCIA

San Juan, Puerto Rico a 30 de junio de 2008.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente Sentencia, se suspende inmediata e indefinidamente del ejercicio de la abogacía a Nelson Rochet Santoro.

Se le impone a Nelson Rochet Santoro el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos del país.

Además, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días a partir de la notificación de esta Opinión Per Curiam y Sentencia.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo